Thomas M. Melton (4999)
meltont@sec.gov
Daniel J. Wadley (10358)
wadleyd@sec.gov
Attorneys for Plaintiff
Securities & Exchange Commission
15 West South Temple Street, Suite 1800
Salt Lake City, Utah 84101
Tel. 801-524-5796
Fax: 801-524-5262

FILED
U.S. DISTRICT COURT
2014 APR 28 A 11: 17
DISTRICT OF UTAH
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>PLAINTIFF,<br><br>v.<br><br>STEVEN B. HEINZ, and S.B. HEINZ & ASSOCIATES, INC.<br><br>DEFENDANTS,<br>and<br><br>SUSAN K. HEINZ<br><br>RELIEF DEFENDANT | Civil No.: 2:13-cv-00753<br><br>Judge: David A. Sam |

**FINAL JUDGMENT AS TO DEFENDANTS STEVEN B. HEINZ AND S.B. HEINZ & ASSOCIATES, INC.**

The Securities and Exchange Commission having filed a Complaint and Defendants Steven B. Heinz ("Heinz") and S.B. Heinz & Associates, Inc. ("S.B. Heinz") (collectively "Defendants") having entered a general appearance; consented to the Court's jurisdiction over Defendants and the subject matter of this action; executed the Consent annexed hereto and incorporated herein for the purpose of settling this action; waived findings of fact and

conclusions of law; waived any right to appeal from this Judgment and Defendant Heinz having admitted the facts set forth below:

The Defendant Heinz admits to the following facts:

1. Beginning in January 2012, Heinz solicited approximately $4 million from more than twenty investors that enabled Heinz to execute rapid buy and sell orders of futures contracts. Heinz represented to investors that he could consistently generate investment returns due to his successful trading strategy and guaranteed a fixed rate of return to investors. Heinz issued investment contracts to investors which guaranteed returns ranging from 6% to 18% per year. Heinz did not generate a profit sufficient to repay investors as guaranteed and made payments to earlier investors using new investor funds.

2. Heinz omitted to disclose to investors that their funds would be used to make payments to previous investors and for his own purposes.

3. From 1986 through March 2004, Heinz was associated with Northwestern Mutual Investment Services, LLC ("Northwestern Mutual") as a registered representative. From April 2004 until October 2012, Heinz was associated with Ogilvie Security Advisors Corp. ("Ogilvie Security") as a registered representative.

4. Beginning in January 2012, and continuing through August 8, 2013, Heinz and S.B. Heinz provided investment advice and offered and sold investment contracts to more than twenty investors raising approximately $4 million. Heinz solicited investments from his current and former clients at Northwestern Mutual and Ogilvie Security and others.

5. Heinz told potential investors that his trading strategy was so successful with his personal funds that he was willing to assist a select group with their investments.

6. Heinz personally, as well as through S.B. Heinz, advised individuals to liquidate their securities holdings and invest the funds with him.

7. Heinz had a pre-existing advisory relationship with many, if not most, of the clients he solicited because Heinz advised and managed their investments while employed at various other firms.

8. Heinz promised some investors that they would earn tax-free income if they provided a "loan" to Heinz to invest for them.

9. Heinz offered to manage the investments of other individuals and make all investment decisions for them.

10. Heinz provided written investment contracts to investors, which specified a guaranteed rate of return. The investment contracts, which are between Heinz and the investor, are a one page document which state the amount invested and the guaranteed rate of return.

11. Heinz did not prepare a private placement memorandum or any other document disclosing the nature of the investment or the risks involved and did not provide financial disclosures or audited financial statements to any investor.

12. Funds from investors were deposited into bank accounts in the name of S.B. Heinz, or Steven B. Heinz then transferred to futures trading accounts maintained in the name of S.B. Heinz. Heinz was the signer on the bank and trading accounts and made all trading decisions.

13. Heinz told certain investors who had provided "loans" to Heinz that all profits generated from their investment would be reinvested and that he would make monthly payments to the investor of their principal, rather than interest, to enable the customer to realize tax-free income.

14. Heinz represented to investors that their funds would be pooled with his personal money and other investor funds.

15. Heinz represented that he was extremely successful in his trading and that any profit generated beyond the fixed rate of return guaranteed to the investor would result in profit for Heinz.

16. Heinz told investors that he maintained sufficient funds in his trading accounts to repay all investors their principal at all times.

## MISREPRESENTATIONS AND OMISSIONS

17. Heinz represented that he would purchase futures contracts for equities, bonds and Euros. He failed to disclose that this would include high risk rapid buy and sell order of future contracts for equities, bonds, crude oil contracts and Euros.

18. Heinz used a portion of investor funds to purchase crude oil futures contracts, among other types of futures contracts, but bank records show that Heinz misappropriated approximately $1 million in investors' funds which he commingled with his own money and used for purposes, such as the payment of his personal credit cards in the amount of $331,000, household expenses, and personal travel.

19. Heinz used investor funds to repay a $600,000 loan he incurred against his personal life insurance policy more than a decade earlier under which he was receiving a 6.15% annual return. He later withdrew at least $200,000 from this policy. Heinz used investor money to fund various business opportunities for his adult children, including multi-level marketing and web-based advertising business opportunities.

20. Contrary to representations made by Heinz that his trading strategy generated a profit and that he always maintained sufficient funds in his trading account to repay all investor principal, as of June 2013 only $311,000 remained in Heinz's trading accounts. Since January

2012, Heinz lost in excess of $1.5 million in commingled funds buying and selling high risk futures contracts. On more than one occasion, Heinz lost in excess of $100,000 in a single day using his strategy of rapidly buying and selling futures contracts.

21. In addition to the $1 million Heinz has spent on personal expenses such as paying for family members to accompany him to Mexico on vacation, Heinz also withdrew approximately $332,000 in cash from his personal and business bank accounts. Although some cash was used to make payments of principal and/or interest to investors, Heinz also made large monthly cash payments to his wife.

22. Bank records show Heinz used new investor funds to repay earlier investors their purported profits or return of principal.

23. Heinz controlled S.B. Heinz's and his personal bank accounts and authorized all fund transfers. Heinz also controlled the S.B. Heinz trading accounts and authorized all trades. He knew his representations to investors regarding the use of investors' funds were false.

**NOW THEREFORE:**

I.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Defendants and Defendants' agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

(b)   to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)   to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

II.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendants and Defendants' agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)   to employ any device, scheme, or artifice to defraud;

(b)   to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)   to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

III.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendants and Defendants' agents, servants, employees, and all persons in active concert or

participation with them who receive actual notice of this Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 [15 U.S.C. § 80b-6(1) and (2)], by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly:

   (a)   engaging in any act, practice, or course of business which is fraudulent, deceptive, manipulative; or

   (b)   making any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, to any investor or prospective investor in the pooled investment vehicle; or otherwise engaging in any act, practice, or course of business that is fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

IV.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendants are, jointly and severally, liable for disgorgement of $3,461,963, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $194,712.84, for a total of $3,656,675.84. Based on Defendants' sworn representations in their Statements of Financial Condition dated October 2013, and other documents and information submitted to the Commission, however, the Court is ordering Defendants to pay disgorgement of $1,089,750, of the disgorgement and pre-judgment interest thereon and the balance of disgorgement and prejudgment interest is waived. Further, the Court is not ordering the payment of a civil penalty based upon the Defendants' sworn representations in their Statements of Financial Condition and other documents and information submitted to the Commission.

Defendants shall satisfy this obligation by paying $1,089,750 to the Securities and Exchange Commission pursuant to the terms of the payment schedule set forth in paragraph V below after entry of this Final Judgment. Defendants may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendants may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Steven B. Heinz and S.B. Heinz & Associates, Inc. as a defendants in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendants shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendants relinquish all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant.

The Commission shall hold the funds (collectively, the "Fund") and may propose a plan to distribute the Fund subject to the Court's approval. The Court shall retain jurisdiction over the administration of any distribution of the Fund. If the Commission staff determines that the Fund will not be distributed, the Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury.

The determination not to impose a civil penalty and to waive payment of all but $1,089,750 of the disgorgement and pre-judgment interest is contingent upon the accuracy and

completeness of Defendants' Statements of Financial Condition. If at any time following the entry of this Final Judgment the Commission obtains information indicating that Defendants' representations to the Commission concerning their assets, income, liabilities, or net worth were fraudulent, misleading, inaccurate, or incomplete in any material respect as of the time such representations were made, the Commission may, at its sole discretion and without prior notice to Defendants, petition the Court for an order requiring Defendants to pay the unpaid portion of the disgorgement, pre-judgment and post-judgment interest thereon, and the maximum civil penalty allowable under the law. In connection with any such petition, the only issue shall be whether the financial information provided by Defendants was fraudulent, misleading, inaccurate, or incomplete in any material respect as of the time such representations were made. In its petition, the Commission may move this Court to consider all available remedies, including, but not limited to, ordering Defendants to pay funds or assets, directing the forfeiture of any assets, or sanctions for contempt of this Final Judgment. The Commission may also request additional discovery. Defendants may not, by way of defense to such petition: (1) challenge the validity of the Consent or this Final Judgment; (2) contest the allegations in the Complaint filed by the Commission; (3) assert that payment of disgorgement, pre-judgment and post-judgment interest or a civil penalty should not be ordered; (4) contest the amount of disgorgement and pre-judgment and post-judgment interest; (5) contest the imposition of the maximum civil penalty allowable under the law; or (6) assert any defense to liability or remedy, including, but not limited to, any statute of limitations defense. Defendants shall also pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

V.

Defendants shall pay the total of disgorgement and prejudgment interest due of $1,089,750 to the Commission according to the following schedule: (1) $203,750, within 14 days

Case 2:13-cv-00753-DS Document 30 Filed 04/28/14 Page 10 of 11
Case 2:13-cv-00753-DS Document 28-1 Filed 04/24/14 Page 10 of 11

Of entry of this Final Judgment; (2) and $886,000 within 365 days of the entry of the Final Judgment. Payments shall be deemed made on the date they are received by the Commission and shall be applied first to post judgment interest, which accrues pursuant to 28 U.S.C. § 1961 on any unpaid amounts due after 180 days of the entry of Final Judgment. Prior to making the final payment set forth herein, Defendants shall contact the staff of the Commission for the amount due for the final payment.

If Defendants fail to make any payment by the date agreed and/or in the amount agreed according to the schedule set forth above, all outstanding payments under this Final Judgment, including post-judgment interest, minus any payments made, shall become due and payable immediately at the discretion of the staff of the Commission without further application to the Court.

VI.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that for a period of five years from the date of this Final Judgment, Defendant shall not engage in or participate in any unregistered offering of securities conducted in reliance on Rule 506 of Regulation D (17 C.F.R. § 230.506), including by occupying any position with, ownership of, or relationship to the issuer enumerated in 17 C.F.R. § 230.506(d)(1).

VII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendants shall comply with all of the undertakings and agreements set forth therein.

VIII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, the allegations in the complaint are true and admitted by Defendant Heinz, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant Heinz under this Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Heinz of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

IX.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Order Freezing Assets, Accelerating Discovery and Prohibiting Destruction of Documents (Docket #4) and all extensions and amendments of that Order, imposed pursuant to stipulation, Court order or otherwise, shall remain effective until further order of the Court.

X.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Judgment.

Dated: _April 28th, 2014_

_____
UNITED STATES DISTRICT JUDGE